UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GREAT LAKES INSURANCE SE, FORMERLY GREAT LAKES REINSURANCE (UK) SE, <br><br> Plaintiff, <br><br> V. <br><br> EDDY BOWERS ENTERPRISES, <br><br> Defendant. | § § § § § § § § § § § § | CIVIL ACTION NO. 5:17-cv-00253 <br> JURY |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Great Lakes Insurance SE, formerly Great Lakes Reinsurance (UK) SE files this Original Complaint for Declaratory Judgment against Defendant Eddy Bowers Enterprises and respectfully shows as follows:

### I.
### *Parties*

1. Plaintiff Great Lakes Insurance SE, formerly Great Lakes Reinsurance (UK) SE ("Great Lakes") is a German company with its principal place of business in Munich, Germany.

2. Defendant Eddy Bowers Enterprises, Inc. is a Texas corporation with its principal place of business in Schertz, Texas, and may be served with process through its registered agent, Eddy Bowers, 2608 Hidden Grove Ln., Schertz, Texas 78154-2765.

### II.
### *Jurisdiction and Venue*

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and § 2201, *et seq*. This is a dispute between a German company with its principal place of business in

Germany and a Texas corporation with its principal place of business in Texas. Thus, there is complete diversity of citizenship between the parties. The amount in controversy exceeds the minimum jurisdictional limits of this Court as Defendant has demanded an amount of no less than $184,456.70 from Plaintiff.

4. Pursuant to 28 U.S.C. § 1391, venue is proper in the Western District of Texas, San Antonio Division because Eddy Bowers Enterprises, Inc. and the subject property are located in this District and a substantial part of the events giving rise to this action occurred in this District.

### III.
### *Factual Background*

5. This is an insurance coverage dispute under a commercial insurance policy issued by Great Lakes to Eddy Bowers Enterprises, for the policy period from January 25, 2016 to January 25, 2017 (the "Policy"). Subject to its terms and conditions, the Policy provides coverage for a commercial property owned by Eddy Bowers Enterprises for scheduled properties as follows:

| PROPERTY | ADDRESS | POLICY LIMIT |
| --- | --- | --- |
| Prem. 1, Bldg. 1 | 5115 A Old Seguin Rd. | $104,640 |
| Prem. 2, Bldg. 1 | 5115 B Old Seguin Rd. | $80,000 |
| Prem. 3, Bldg. 1 | 5115 C Old Seguin Rd. | $40,000; |
|  | fence | $3,000 |
| Prem. 4, Bldg. 1 | 5211 A Old Seguin Rd. | $80,000 |
| Prem. 5, Bldg. 1 | 5211 B Old Seguin Rd. | $30,000 |
|  | fence | $3,000 |
| Prem. 6, Bldg 1 | 112 Edalyn #1 | $35,000 |
| Prem. 7, Bldg. 1 | 112 Edalyn #2 | $40,000 |
| Prem. 8, Bldg. 1 | 112 Edalyn #3 | $80,000 |

|                    | fence         | $3,000  |
|--------------------|---------------|---------|
| Prem. 9, Bldg. 1   | 112 Edalyn #4 | $45,000 |
| Prem. 10, Bldg. 1  | 5203 Seguin   | $85,000 |
|                    | fence         | $1,000  |

(hereinafter "the Property").

6. On or about August 15, 2016, Defendant submitted a notice of loss under the Policy for purported storm/hail damage to the Property as a result of a reported April 29, 2016 storm. The Property consists of metal buildings of various ages at the locations identified above. After acknowledging receipt of the notice of loss, Great Lakes timely inspected the Property and analyzed the claimed roof damage utilizing the services of an independent adjuster and an engineer licensed in the State of Texas.

7. The inspections showed hail impact marks, hail splatter marks, and marks that were determined not to have been consistent with hail impact. None of the observed indentations or marks caused creasing or flaking of the roofing material and the engineer determined that none of the observed indentations constituted damage that would prevent the roofs from continuing to function as a barrier to the entrance of the elements. There are no storm created openings on the roofs or the Property's exterior. As such, the roofs were only cosmetically damaged by the hail impacts and the function and service life of the roof has not been diminished.

8. Further, as part of Great Lakes' investigation of the reported claim, Great Lakes obtained a weather report from Corelogic to verify hail damage at the property. The report, for the period January 1, 2006 to September 9, 2016 found the following:

| DATE: | SIZE OF HAIL AT LOCATION: | SIZE OF HAIL WITHIN 1 MILE OF LOCATION | SIZE OF HAIL WITHIN 3 MILES OF LOCATION |
|---|---|---|---|
| 04/12/2016 | 1.5" | 1.9" | 3.3" |
| 03/18/2016 | -- | .75" | .75" |
| 04/07/2014 | .8" | .9" | .9" |
| 04/02/2013 | 1" | 1" | 1.1" |
| 03/31/2013 | 1.3" | 1.4" | 1.7" |
| 02/03/2012 | .9" | .9" | 1" |
| 04/23/2010 | 1.1" | 1.2" | 1.5" |
| 05/02/2006 | 1.2" | 1.6" | 2.1" |

Notably, there were seven instances of hail reported at the property for the period of January 1, 2006 to September 9, 2016, including five hail events with hail at least one inch in diameter.

9. A second inspection of the property by an engineer concluded that hail marks indicated the hail lacked density to produce dents in the metal roofs. Gaps in seams in the roofs were in sporadic locations and were prevalent in areas where spatter marks were present as well as in areas where no hail spatter marks were observed. Gaps in seams were primarily located near screw heads, indicating that the cause of gap was caused by overtightening of screws. There were no reported interior leaks which were attributed to any storm-created opening in the roofs.

10. On information and belief, Defendant demanded payment under the Policy of $204,951.89, stating it would take no less than $184,456.70. No estimate or engineering report has been provided by Defendant to support the demand. Great Leaks believes that Defendant contends that the Property's roofs must be fully replaced as a result of hail damage. As stated above, based on its inspection of the Property and analysis of the roofs, Great Lakes has not identified evidence of damage that prevents the roof from continuing to function as a barrier to the entrance of the elements. The hail impact marks constitute cosmetic damage to the roof. No storm-created opening caused interior water intrusion to the buildings. Also, multiple hail events

have occurred at the Property. Accordingly, after conducting a reasonable investigation of the claimed damage, Great Lakes advised Defendant of the Policy's coverage and that no payment would be issued for the claimed roof damage. On information and belief, Defendant disputes Great Lakes' coverage determination under the Policy.

## IV.
### *Claim for Declaratory Relief*

11.     Pursuant to 28 U.S.C. § 2201, Great Lakes seeks a judicial declaration that the Policy does not provide coverage for the claimed roof damage to the Property. The Policy includes an endorsement titled Limitations on Coverage for Roof Surfacing (the "Endorsement"), as quoted above an incorporated fully herein by reference which expressly states that Great Lakes will not pay for cosmetic damage to roof surfacing caused by wind and/or hail.

12.     The policy at issue contains an express exclusion for hail damage to the roofs which is cosmetic in nature. The Policy states:

**LIMITATIONS ON COVERAGE FOR ROOF SURFACING (CP 10 36 10 12)**

This endorsement modifies insurance provided under the following:

\*     \*     \*

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

SCHEDULE

| Premises Number | Building Number | Indicate Applicability (Paragraph A. and/or Paragraph B.) |
|---|---|---|
| All | All | Paragraph B |

\*     \*     \*

**B.**     The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.:**

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind

and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

13. Additionally, the Policy states:

**COMMERCIAL PROPERTY CONDITIONS,** form CP 00 90 07 88

\* \* \*

**H.  POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

a. During the policy period shown in the Declarations…

\* \* \*

**CAUSES OF LOSS – SPECIAL FORM**

**B.  Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss

\*     \*     \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\*     \*     \*

d. (1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\*     \*     \*

(4) Settling, cracking, shrinking or expansion;

\*     \*     \*

f. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

\*     \*     \*

    m.  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3.  We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*    \*    \*

    a.  Faulty, inadequate or defective:

        (1)  Planning, zoning, development, surveying, siting;

        (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3)  Materials used in repair, construction, renovation or remodeling; or

        (4)  Maintenance;

    of part or all of any property on or off the described premises.

\*    \*    \*

**C.**  **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1.  We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

\*    \*    \*

    c.  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        (1)  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        (2)  The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

14. The Property is identified in the Schedule. Accordingly, the Endorsement excludes coverage for cosmetic damage to the Property's roofs, which means the "marring, pitting or other

superficial damage that altered the appearance of the roof surfacing" but "does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred."

15. The Property's roof sustained hail impacts and spatter marks that have not affected the roofs' function or resulted in a loss to the roofs' service life. Accordingly, the reported hail dents, which may or may not have occurred within Great Lakes' policy period, constitute cosmetic damage and the Policy does not provide coverage for this damage.

## V.
### *Conclusion and Prayer*

Based on the foregoing, Great Lakes respectfully asks the Court for judgment in its favor as follows:

a. Declaring that the Policy does not provide coverage for the claimed roof damage to the Property;

b. Declaring that Great Lakes has no duty to pay Defendant under the Policy for the claimed roof damage; and

c. For such other and further relief to which it may be justly entitled, whether at law or in equity.

Respectfully submitted,

*/s/ D. Christene Wood*
D. Christene Wood, **attorney-in-charge**
State Bar No. 24042188
THOMPSON, COE, COUSINS & IRONS, L.L.P.
One Riverway, Suite 1400
Houston, TX 77056
Telephone: (713) 403-8382
Facsimile: (713) 403-8299
cwood@thompsoncoe.com

Darrell S. Cockcroft
State Bar No. 24007015
Jennifer M. Kearns

        State Bar No. 24049865
        THOMPSON, COE, COUSINS & IRONS, L.L.P.
        701 Brazos, Suite 1500
        Austin, Texas 78701
        Telephone:  (512) 708-8200
        Facsimile:   (512) 708-8777
        dcockcroft@thompsoncoe.com
        jkearns@thompsoncoe.com